UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WITKIN,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>MARIANA LOTERSZTAIN, et al.,<br><br>　　　　　Defendants. | No. 2:15-cv-0638 KJN P<br><br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

I. Introduction

　　　Plaintiff is a 38 year old state prisoner, proceeding pro se and in forma pauperis. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. Plaintiff consented to proceed before the undersigned for all purposes. See 28 U.S.C. § 636(c). Defendants have not responded to the court's order concerning the issue of consent. (ECF No. 14.) On June 1, 2015, the court announced its intention to consider plaintiff's request for injunctive relief, and would consider any response defendants offered within thirty days. On June 26, 2015, the Office of the Attorney General filed a response by special appearance. On June 29, 2015, plaintiff filed a reply. As set forth below, plaintiff's motion should be denied.

II. The Parties' Positions

　　　Plaintiff seeks preliminary injunctive relief in the form of an order requiring defendants to order him an MRI, and to refer him to a neurologist or an orthopedic specialist, ostensibly to

1

1  diagnose the source of his alleged extreme back pain.  Plaintiff contends that the balance of
2  hardships tips in plaintiff's favor.  He argues that defendants have an on-site MRI, which is about
3  a three minute walk from plaintiff's housing unit.  Thus, he contends that defendants will suffer
4  little hardship in providing plaintiff with an MRI.  By contrast, plaintiff argues that he continues
5  to suffer unbearable, constant pain, which is worse than the pain he sustained when he suffered
6  five gunshot wounds.  (ECF No. 1 at 11.)  Plaintiff argues that awarding him injunctive relief is in
7  the public interest to prevent an Eighth Amendment violation.
8       In response, defendants provide the declaration of plaintiff's treating physician, Dr.
9  Lotersztain, who has been working with plaintiff since June of 2013.  (ECF No. 11-1.)  Dr.
10  Lotersztain confirms that plaintiff is consistent in complaining of severe low back pain, and
11  demanding an MRI, as well as to be referred to corrective spine surgery.  (ECF No. 11-1 at 2.)
12  However, plaintiff also consistently admits to being able to exercise regularly.  Indeed, the
13  physical therapist who saw plaintiff on August 21, 2013, documented that plaintiff was in no
14  distress, playing sports, and his physical exam showed no motor or neurologic deficits.  (ECF No.
15  11-1 at 2.)  Dr. Lotersztain has personally seen plaintiff run very fast down the stairs without
16  showing any signs of difficulty, and claims plaintiff is "extremely well built with high muscular
17  mass."  (ECF No. 11-1 at 2.)  Plaintiff's lower spine x-rays on December 10, 2012, showed mild
18  degenerative disk disease, which Dr. Lotersztain states is "very common in young athletes."  (Id.)
19  The doctor declares that plaintiff is able to walk, run, exercise, and perform his activities of daily
20  living, and further testing is not medically necessary.  (ECF No. 11-1 at 3.)  Dr. Lotersztain
21  opines that she has found no indications of any anatomic or physiologic disease to explain
22  plaintiff's pain complaints, and that mild degenerative disk disease does not explain the
23  symptoms plaintiff expresses.  Dr. Lotersztain opines that the most likely diagnosis to explain
24  plaintiff's "various and changing symptoms is factitious disorder or somatic symptom disorder,"
25  which "are psychological conditions that may be made worse with further radiologic testing or
26  pharmacological agents."  (ECF No. 11-1 at 3.)  Dr. Lotersztain avers that she is "presently
27  conferring with [her] colleague physicians and mental health professionals to confirm this
28  ////

diagnosis and provide optimal care for [plaintiff]." (Id.) In the meantime, the doctor states that the "most appropriate treatment is to continue with patient education and reassurance." (Id.)

In reply, plaintiff submitted his own declaration, and a medical record reflecting results from lab tests performed in late May 2015. (ECF No. 12.) Plaintiff states that on December 4, 2012, he felt a pop in his lower back, accompanied by severe pain, and that by noon on December 5, he was unable to walk or even lift his legs. He was removed by wheelchair to the treatment facility where he received multiple injections. Upon discharge, plaintiff claims he was only able to take baby steps. In early 2013, Dr. Pfile ordered plaintiff physical therapy, and plaintiff was taught exercises to strengthen his core and instructed to perform the exercises daily and told "that if [plaintiff's] core became sufficiently strong it would resolve the problem with [his] lumbar spine." (ECF No. 12 at 2.) The physical therapist and Dr. Pfile told plaintiff it was "very important" to keep as active as possible, to master the exercises, performing them 4-5 times per week, warned plaintiff he might need to do them for the rest of his life, and that if he did, plaintiff would be able to do everything anyone else [his] age could do physically." (Id.) In May of 2013, Dr. Lotersztain became plaintiff's doctor, and she also stressed the importance of physical therapy and being active, even if it was painful. (ECF No. 12 at 3.) Plaintiff states that he faithfully performs the exercises, which take nearly an hour to complete, and despite how strenuous, taxing, and extremely painful they are to perform. Although plaintiff's abdominal muscles became very defined and sculpted, plaintiff avers that the pain in his lumbar spine never subsided. Since December of 2012, plaintiff suffers the following additional symptoms: swollen and stiff lumbar region; often a burning or pins and needles feeling in his lumbar region; often unexpected weakness in the muscles of his arms and legs; tingling and numbness radiating through his buttocks and around his genitals; pain often radiates to his legs and feet; loss of reflexes and motion through his lower body; and often a loss of sensation radiating to his arms and legs; burning sensation accompanied by shooting pains traveling down his buttocks and legs. (ECF No. 12 at 2.) Lying down or resting does not provide plaintiff with relief. Plaintiff states he has reported these symptoms to medical staff at CSP-Solano 100 times. (ECF No. 12 at 2-3.)

////

Plaintiff states that on February 4, 2015, his back spasmed so severely that he could not move his legs. He was again transported to the medical facility by wheelchair where he again received a series of injections. Plaintiff claims that his mobility was further reduced for a least a month. Since the December 2012 injury, plaintiff estimates that he has recovered only 60% of his original mobility. (ECF No. 12 at 4.) Since filing this lawsuit, plaintiff states he has presented at clinic once a week, but that prison staff does nothing to address his symptoms, but simply checks his vitals and issues over the counter painkillers.[1]

III. Injunctive Relief Standards

The party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter). The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and can show that an injunction is in the public interest, a preliminary injunction may issue so long as serious questions going to the merits of the case are raised and the balance of hardships tips sharply in plaintiff's favor. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious

////

---

[1] Plaintiff now claims that on June 10, 2015, Dr. Lotersztain informed him that he has sustained liver damage from the painkillers, stating that plaintiff's liver enzymes are more than double the healthy range. (ECF No. 12 at 4.) The lab results reflect that the liver enzyme tests are out of range:

| Test | Result | Reference Range |
|------|--------|-----------------|
| AST  | 99 H   | 10-40 U/L       |
| ALT  | 103 H  | 9-46 U/L        |

(ECF No. 12 at 6.) However, plaintiff's motion did not include claims concerning alleged liver damage, and therefore defendants did not respond to such claim. Thus, such new claim is not addressed herein.

questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

The principal purpose of preliminary injunctive relief is to preserve the court's power to render a meaningful decision after a trial on the merits. See 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2947 (2d ed. 2010). As noted above, in addition to demonstrating that he will suffer irreparable harm if the court fails to grant the preliminary injunction, plaintiff must show a "fair chance of success on the merits" of his claim. Sports Form, Inc. v. United Press International, Inc., 686 F.2d 750, 754 (9th Cir. 1982) (internal citation omitted). Implicit in this required showing is that the relief awarded is only temporary and there will be a full hearing on the merits of the claims raised in the injunction when the action is brought to trial. In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

V. Discussion

On the one hand, plaintiff continues to complain of severe lower back pain, and defendants refuse to order an MRI, perform other neurological testing, or refer plaintiff to a neurologist or an orthopedic specialist. On the other hand, Dr. M. Lotersztain, who has examined plaintiff on multiple occasions, notes that plaintiff's mild degenerative disk disease, common in young athletes, does not explain the symptoms of which plaintiff complains, and opined that following multiple careful examinations, she found no indications of any anatomic or physiologic disease to explain plaintiff's pain complaints. Rather, she opines that plaintiff may suffer from a psychological condition that may be exacerbated by the performance of other medical testing.

While the Eighth Amendment of the United States Constitution entitles plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d

5

1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06.)

Moreover, a difference of opinion as to the medically acceptable course of treatment does not establish deliberate indifference by prison officials. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Where a prisoner contends the official should have offered a different treatment, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, . . . and the plaintiff must show that they chose this course of action in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

It is unclear at this time whether plaintiff will prevail on the merits of his claim. At present, it appears that plaintiff has a difference of opinion as to the type of medical care he should be provided. The Office of the Attorney General has presented evidence that plaintiff is receiving medical treatment, albeit not the treatment that plaintiff wants or prefers, and that Dr. M. Lotersztain has a reasoned medical opinion as to why further tests are not appropriate at this time. Thus, at this stage of the proceedings, plaintiff has failed to demonstrate that defendants are being deliberately indifferent to his serious medical needs. Plaintiff may be able to demonstrate, through discovery or the provision of expert testimony, that some or all of the defendants were deliberately indifferent based on their failure to perform an MRI, a fairly routine diagnostic procedure, or to refer plaintiff to a medical specialist, once plaintiff presented with increasing and

1  continued back pain.  But the present record does not support an order for preliminary injunctive
2  relief at this time.
3      In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is
4  directed to assign a district judge to this case; and
5      IT IS RECOMMENDED that plaintiff's request for preliminary injunctive relief (ECF
6  No. 1) be denied.
7      These findings and recommendations are submitted to the United States District Judge
8  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
9  after being served with these findings and recommendations, any party may file written
10 objections with the court and serve a copy on all parties.  Such a document should be captioned
11 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
12 objections shall be filed and served within fourteen days after service of the objections.  The
13 parties are advised that failure to file objections within the specified time may waive the right to
14 appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
15 Dated:  September 22, 2015

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/witk0638.pi